UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Reverend Eugene Schofield
          Plaintiff

          V.                                    Civil Action
Harold W. Clarke,                               No.
Commissioner of DOC
Carol Mici,                      09 CA 40204 NMG
Director of Classification
Paul F. Oxford,
Acting Chief, Investigative Services
James Saba,
Superintendent of NCCI Gardner
          Defendants

_____

VERIFIED CIVIL RIGHTS COMPLAINT

Introduction

       This is a 42 U.S.C. 1983 civil rights complaint where plaintiff Reverend Eugene Schofield, complains of and do asserts, that the defendants are attempting to place plaintiff in a DOC Facility where plaintiff's safety could be at risk and plaintiff killed.

       Plaintiff further asserts that the defendants deliberate indifference to plaintiff's safety is motivated by retalitory actions and inactions because plaintiff has exercised his rights and filed numerous of grievances that have been referred to DOC office of Investigative Services, and numerous law suits in behalf of plaintiff and several other inmates pending in both state and Federal Courts.

2

Plaintiff is presently being housed in the prisons Segregation Unit ("TSMU") after being placed here without disciplinary reasons on pretext of an investigation, subsequently re-classified and awaiting transfer to MCI Norfolk where plaintiff's life could be in danger due to previous altercations where an attempt was made kill plaintiff by several inmates whose friends could be at Norfolk.

Plaintiff is requesting an Emergency TRO/preliminary injunction and immediate hearing on this matter.

## JURISDICTION

This action is brought pursuant to 42 U.S.C. 1983. Jurisdiction is vested in this courts power pursuant to 28 U.S.C. secs. 1343, 1331 and 1332. This court also has pendant jurisdiction under 28 U.S.C. 1367.

## PARTIES

1.    The plaintiff Reverend Eugene Schofield is a legally ordained Protestant Christian Minister who has been duly ordained since 1983-present. (see exhibits A&B copied from plaintiff's DOC 6 part folder), whom recently came off a self imposed Sabbatical to fulfill the call of God on his life through is legally established non-profit Religious organization registered and incorporated in Boston, MA. (See exhibits COGICE GOODNEWS LETTER bottom of page 8 and A-3).

Plaintiff is also an inmate confined at North Central Correctional Institution ("NCCI") in Gardner, MA where he has specifically worked in his religious vocation using his skills and talents over the course of 25 years with the approval and support of the DOC administration at Gardner and various DOC Facilities. (See Exhibits C + E).

3

2.       Defendant Harold W. Clark is the Commissioner For the Massachusetts Department of Corrections ("DOC") and responsible For DOC's overall Staff, policies and regulations including the Safety of all DOC inmates. He is being sued in both his official and individual capacity under the "color of law" as an State employee.

3.       Defendant Carol Mici is Director of Central Classification and responsible of placing All DOC inmates in proper DOC housing Facilities and consider Safety (enemy) issues before placing them. She is being sued in both her official and individual capacity under the "color of law" as an State employee.

4.       Defendant Paul F. Oxford is Acting chief Investi- gator For DOC investigative Services investigating alleged officer misconduct grievances Filed by inmates. He is being sued in both his official and individual capacity under the "color of law" as an state employee.

5.       Defendant James Saba is the Superintendent of "NCCI Gardner" who is responsible For enforcing DOC policy and regulations and the safety of NCCI inmates. He is being sued in both his official and individual capacity under the "color of law" as an State employee.

## FACTS

6.       On and about January 12, 2009 plaintiff was transfered from DOC shirley Maximum Security Prison ("SBCC"), to NCCI Gardner after a 3 Month Stay in SBCC Segregation Unit For Fear his safety.

7.       Prior to going to SBCC plaintiff was being housed at Old Colony Correctional Institution ("OCCC")

4

in that prisons segregation Unit for fear of his safety because of threats made on his life by inmates and officers who had labelled plaintiff a "rat" (i.e. snitch) for plaintiff informing on Occc's 2 chaplains.

8.      Due to the ongoing threats on plaintiff's life while in OCCC's segregation Unit and the imminent danger of plaintiff being transfered to SBCC's general population. Plaintiff's attorney wrote a letter to defendant Clarke informing him of the danger to plaintiff by submitting evidence of the threat with a request not to transfer plaintiff. (see exhibits - D w/ attached 2 pg 6/9/08 letter of threat).

9.      That an alleged investigation was initiated by order of defendants Clarke and Oxfords investigative drivision into the threat letter and plaintiff's safety concerns.

10.      That, on and about 8-4-08 plaintiff wrote a 6 page letter to defendant about plaintiff's safety concerns giving specific information to defendant Mici about several incidents of plaintiff being threatened by inmates with a list of 6 inmates named as potential threats and enemies to plaintiff. (see exhibit -S attached).

11.      That, defendant Mici wrote plaintiff back on 8-7-08 in response to his 8-4-08 letter and completely acknowledge, but Ignored plaintiff threats and enemy situation and only addressed the threat letter from Bradford Jones, sent to defendant Clarke by plaintiff's attorney. stating in her letter that the alleged investigation into the threat letter was unsubstantiated. (see

5

exhibit-T2 attached).

12.      That, inspite of plaintiff's life being threatened
and would be placed in danger if he was transfered to
SBCC in general population. Plaintiff was transfered
by defendants Clarke and Mici to SBCC to be housed
in general population.

13.      When plaintiff arrived at SBCC he refused to go
into general population for fear of his safety and was
placed in Segregation at SBCC.

14.      The following day plaintiff was told to move to
general population and plaintiff refused for his safety
concerns. Plaintiff was given a disciplinary report for
refusing a housing assignment and remained in SBCC's
Segregation unit. (See exhibits - DR and STED attached).

15      On and about 10/21/08 plaintiff's attorney wrote
a 2 page letter to the Superintendent of SBCC. Plaintiff's
attorney's letter informed the Superintendent of the
threats against plaintiff, the potential danger and
gave the Superintendent a warning if plaintiff was
placed in general population against his will and to place
plaintiff into Protective Custody as plaintiff demanded.
(See exhibit-Warning attached).

16.      Plaintiff's request to be officially placed on
Protective Custody and to be howsed in SBCC's Protective
Custody unit was ignored entirely.

17.      On and around the first week of November
plaintiff received 3 seperate Final decision from
Grievance Coordinator Mark S. Fogaren, CO II,

6

From OCCC that were Filed by plaintiff before he was transfered to SBCC.

18.     All 3 grievances decisions made it very clear that plaintiff did in fact have safety issues, inmate conflicts, that required plaintiff to be housed in protective custody for his safety. (See exhibits 1,2,3 attached).

19.     That, those 3 decisions contradicted the 2 letters that was addressed to plaintiff's attorney in response to his June 18, 2008 letter to defendant clarke. (See exhibits Contradiction SJD and CJM attached).

20.     Plaintiff remained in SBCC's Segregation Unit up until his point base reduced from 14 to 11 and his outstanding disciplinary report for refusing a housing assignment was dismissed voluntarily by SBCC.

21.     Plaintiff was then reclassified and transfered to NCCI Gardner on January 12, 2009 were this complaint is initiating.

22.     On and about 2/27/09 plaintiff filed a grievance against officers Douglas Hutt and Jeff J, Babbit alleging racial threats and intimidation and verbal assault by these officers as officer misconduct. Said grievance was processed and referred to defendant Oxford for investigation according to 103 DOC 522. (See exhibit-C-1 attached).

23.     That on and about 3/1/09 plaintiff wrote a letter to defendant clarke about the alleged grievance against officers Hutt and Babbit's

7

racial discrimination and verbal assault in violation of
103 Doc 400 and requested defendant Clark intervene
and address this issue.

24.        That, on and about 3/17/09 plaintiff received a
3/16/09 letter from defendant Oxford in behalf of
defendant Clarke acknowledging plaintiff's allegations
of staff misconduct and acknowledging plaintiff's
undated letter to defendant Oxford request a un-
biased and thorough investigation of plaintiff's allega-
tions against officers Huff and Babbit. (See exhibit-
D-1).

25.        On and about 4/8/09 plaintiff received a
4/2/09 letter from defendant Saba acknowledging
plaintiff's grievance and allegations of staff miscon-
duct and the initiation of an investigation. (See
exhibit - Received 4-8-09)

26.        On and about 3/17/09 plaintiff a grievance
for the second time against officer Jeff J. Babbit alleging
officer Babbit was hostile and aggressive towards
plaintiff in retaliation for filing a grievance against
him that was under investigation. That grievance was
also referred to defendant Oxford for investigation.
(See exhibit-Babbit-2).

27.        On and about 3/31/09 plaintiff received a 3/26/09
letter from defendant Saba acknowledging plaintiff's second
grievance against officer Babbit and the initiation of
an investigation, (See exhibit- Received 3/31/09).

28.        On and about 3/22/09 plaintiff filed a third
grievance against officer Babbit alleging further aggres-

sive actions and including officer Babbit being intimidating to plaintiff and overtly stalking plaintiff. That grievance was partially approved) (See exhibit-Received 4-9-09).

29.        That, on and about 3/24/09 plaintiff filed a grievance against officer William Lewis alleging he was retalitory, intimidating and hostile towards plaintiff while he was interviewing plaintiff in regards to plaintiff grievance against officer Babbit. (See exhibit-Received 3/28/09 which was referred to defendant Oxford for investigation).

30.        That, on and about and between Jan 09 to the present plaintiff assisted 5 inmates with filing 5[1] seperate Federal law suits now pending in court.[1] The case names are <u>Wright v. Saba</u>, <u>Jones v. Saba, et al</u> <u>McGee v. UMass Correctional Health, et al</u>, and <u>Howell v. O'Malley, et al</u>

31.        That, defendant Saba was named as an defendant in 3 of the 4 Law suits filed by 3 of the inmates that plaintiff assisted with writing and filing etc as their lawyer (i.e. jailhouse lawyer).

32.        That, defendants Clarke and Oxford was named as an defendant in 2 of the 4 law suits filed by 2 of the 4 inmates that plaintiff assisted with writing and filing etc as their jailhouse lawyer.

---

[1] The Wright v. Saba case was dismissed for failure to exhaust remedies.

9

33.      That as a result of plaintiff Filing numerous grievances and law suits in behalf of other inmates as a jailhouse lawyer. Plaintiff became aware of an display of officers hostility and displaying of evil eyes towards plaintiff when he made direct contact with several of them who were named as defendants in the inmates law suits and who were under investigation as a result of plaintiff Filing grievances.

34.      That, on and about 7/05/09 plaintiff Filed another grievance against officer Mari-Jane Morgan alleging retalition, religious and racial discrimination and hostility towards plaintiff in violation of 103 DOC 400.01, 02, 03 and 04 and in violation of G.L.c. 127 sec. 38E (3). That grievance was also referred to defendant Oxford. ( See exhibit-Recieved 7/8/09, 2 pgs).

35.      That, pursuant to regulation / policy 103 DOC 522 specific guidelines are promulgated by defendant Clarke to adhere to and inforce by defendants Saba and Oxfords obligatory duties.

36.      That, specific inmates grievances are placed in specific catagories For investigative purposes according to 103 DOC 522.06 Catagories of Employee Misconduct Investigations

37.      Plaintiff read through the policy and discovered that there are 2 procedures promulgated to Follow.
   A. Catagory I - Investigation by a Superintendent / Department Head / Division Head

   B. Catagory II - Investigation by IAU (i.e. internal Affairs Unit of DOC central office of Investigation

10

Services).

38.      Plaintiff further discovered that alleged mis-conduct of employees that are serious and require IAU to investigate are the following according to 103 DOC 522.06 B, 1 and 2;

      e. Excessive force of inmate

      h. assault

      i. physical abuse

      J. Workplace violence

      K. civil Rights Violations

      L. discrimination, harassment and Retaliation

39.      Plaintiff's 4 out of the 5 grievances Alleged civil Rights Violations (K), discrimination, harassment and Retaliation (L), placing them in Catagory II and to be investigated by IAU.

40.      Plaintiff's 4 grievances were not investigated by IAU per policy but were investigated by defendant Saba's administration IPS officers and decided on by defendant Saba who ruled plaintiff's 3 out of 4 grievances/complaints against the staff members have been "not Sustained" (i.e. there is insufficient evidence to prove or disprove the complaint. cited from 103 DOC 522.08 At Not Sustained definition/finding). (See exhibits-NS1,2,3).

41.      Pursuant to 103 DOC 522 policy defendant Oxford should have investigated and decided on plaintiff's Catagory II grievance/complaint not defendant Saba according to policy.

42.      On and about 10/10/09 plaintiff was physically assaulted without plaintiff provocation by an inmate in plaintiff's

11

assigned housing unit I-East.

43       Plaintiff was physical punched in the Face causing plaintiff Fear, emotional distress and anger.

44.      Plaintiff, troubled by the assault + Battery decided to not retaliate nor engage others to revenge plaintiff.

45,      On and about 10/12/09 plaintiff was approached in his housing Unit by IPS officer Juan Colon in the presence of the inmate who assault + Battered plaintiff and began accusing plaintiff of being involved in a Fight with the inmate who punched plaintiff in the face.

46,      Plaintiff denied being involved in a fight as IPS officer Colon had explained he had heard. Plaintiff told officer Colon that his intelligence was incorrect and again denied fighting. Plaintiff did not say he was assaulted by the inmate and after a verbal exchange between plaintiff and officer Colon who became angry at plaintiff. plaintiff excused himself and left officer Colon and the inmate who had punched plaintiff in the face.

47.      ON and about 10/13/09 plaintiff was called to the IPS office by officer Colon. In his office/Cubicle officer Colon began to accuse plaintiff of being involved in a fight with the inmate who had assaulted plaintiff. Officer Colon in a loud and angry voice told plaintiff that plaintiff disrespected him when Colon came to speak with plaintiff in his housing Unit.

48.      officer Colon in a angry voice told plaintiff "your gonna sign a release Form To remain in population. Plain-

12

tiff told officer Colon that he would not sign and that his lawyer adviced plaintiff not to sign or admit guilt to Colons Facts.

49.     Then Colon Jumps out of his seat and in a angry voice told plaintiff to go to the holding cell. Plaintiff complied as Colon Broaded over plaintiff as he escorted plaintiff to the cell murmering aloud, " you should of signed like the other guy".

50,     After about 5-10 minutes pass Colon comes to the cell with officer Keith Plantine. Colon in a anger voice tells plaintiff, "your under investigation", your going to the hde (i.e. Segregation Unit).

51.     Plaintiff was escorted to the Segregation Unit without incident by officers Colon and Plantine.

52.     On and about 10/14/09 plaintiff filed a grievance against IPS officer Juan Colon alleging officer Colon acting out in anger placed plaintiff in Segregation on pretext of an investigation and was retaliating against plaintiff for plaintiff asserting his right not to sign Colons release for at the advise of plaintiff's attorney and for plaintiff grievances and law suits against staff and officers at NCcI. (see exhibit- JC)

53.     On and about 10/16/09 plaintiff filed a law suit in Suffolk Superior Court against IPS officer Juan Colon alleging retaliation in violation to plaintiff's First Amendment wright.

54.     On and about 10/16/09 plaintiff wrote a letter to officer Juan Colons Superior officer Lt. Thomas E. Bong requesting to speak with him

13

about officer Cobos retalitory misconduct and about plaintiff being assaulted in I-East housing unit.

55.        on 10/16/09 plaintiff filed a grievance about being punched in the face and requested to be placed back into general population because plaintiff did no wrong and the inmate who assaulted him should be punished in removed from general population and not the plaintiff. (see exhibit-BET)

56.        Plaintiff also grieved his being punished for not signing Colons release form and stated that he believed the administration was retaliating against plaintiff for his numerous grievances and law suit he had filed and the administrations deliberate indifference towards plaintiff's safety and being assaulted and not disciplining the inmate who assaulted plaintiff.

57.        Plaintiff then wrote a letter to defendant Saba explaining how he was assaulted and demanded he be placed back in population and the aggressive inmate who assaulted him be punished and removed from population and defendant Saba took no action.

58.        Plaintiff also threatened defendant Saba with taking legal action against him for deliberate indifference to plaintiff's safety and being assaulted by the inmate and no disciplining him and told defendant Saba that his actions were retaliatory against plaintiff.

59.        On 10/22/09 defendant Saba came by plaintiff cell and plaintiff asked him did he receive plaintiff's letter and defendant Saba said he did and he was thinking about it and get back to plaintiff.

14

60.    On and about 10/23/09 CPO Mike Kelley informed me that defendant Saba decided to transfer plaintiff and a re-classification hearing was scheduled for 10/28/09 and for plaintiff to write a letter explaining where he wanted to go and why.

61.    On and about 10/26/09 defendant Saba came to plaintiff cell door and said, "we got to talk", Plaintiff was taken out of his cell and placed in cell 7 with defendant Saba.

62.    Defendant Saba asked plaintiff what happened in I-East. Plaintiff explained how he was assaulted by the inmate without provacation on plaintiff's behalf.

63.    Defendant Saba asked plaintiff could DOS Flowers come into the room and listen. Plaintiff agreed and continued talking about being assaulted as defendant Saba and DOS Flowers listened as the kept looking at each other.

64.    Defendant Saba spoke up as plaintiff was talking and said in a joking tone "this guy knows how to talk" looking at DOS Flowers who smiled at defendant Saba's remark. Then defendant Saba said to plaintiff, "So what do we do?" Plaintiff stated it was simple. Put plaintiff back in population and remove the aggresser.

65.    DOS Flowers spoke up and said aloud, "you had your chance" while he look directly at plaintiff then defendant Saba who said nothing.

66.    Plaintiff then said so I'm being shipped

out because of my legal work (i.e. law suits and grievances) and thats it?

67.    Defendant Saba then said "you can say that, it's your right" then he produced a sly smirk on his face. Plaintiff looked over at DoS Flowers who also produced a sly smirk on his face. Plaintiff fully understand that defendant Saba was transfering him solely because of his law suits against him and plaintiff assisting other inmates with filing law suits agains defendant Saba and his staff.

68.    ON 10/28/09 plaintiff had a reclassification board hearing. Plaintiff requested not to be transfered but to remain at Gardner and said he would appeal the boards Recommendation to transfer to Norfoilk. Plaintiff also told the board members that Norfolk was not a safe place for plaintiff to go and that just recently Doc attorney Julie E. Daniels told the Federal Court in her motion of opposition to plaintiff TRO that Norfolk was not a suitable place for plaintiff to go even if plaintiff wanted to. (cited in case No. 08-cv-12025 NG, Schofield v. Dickhaut, et al.).

69.    Plaintiff immediately wrote a appeal to the boards recommendation and requested to remain at Gardner. Plaintiff's appeal was addressed to defendant Saba however classification appeals are finalized by defendant Clarkes designee through defendant Mici's office. (see exhibit - T2 paragraph 2) also exhibit - Recewed 11/2/09

70.    Plaintiff could be transfered to Norfolk and be in danger due to the defendants decision and deliberate indifference motivated by retalitory actions and inactions.

16

## CLAIMS FOR RELIEF/CAUSES OF ACTION

### COUNT I

71.

(Violation of Civil Rights 42 U.S.C. 1983)

as incorporated in paragraphs 1 thru 70, plaintiff alleges that all the defendants are in violation to 42 U.S.C. 1983 by their actions and inactions under color of law as state employees.

### COUNT II

72.

(Violation of 1st Amendment by Retaliation)

as incorporated in paragraphs 1 thru 70, plaintiff alleges that defendant(s) Saba acting out of a retalitory movement and motive set in motion a removal of plaintiff from NCCI Gardner under a pretext of classification because plaintiff exercised his 1st Amendment right to file grievances and law suits in numerous proportion against defendant Saba and his staff.

Plaintiff asserts that but for his exercise of his right the complained of incident would not of occurred, and further defendants Clarke, Mici and Oxford are engaging in relalitory actions and inactions in concert with defendant Saba because of plaintiff's pending law suits against them and but for plaintiff's exercise of his

rights the retaliation of defendants Clarke, Mici and Oxford would not have occurred Nor improperly taken.

73.                                 Count III

(Violation of 14th Amendment Equal Protection)

As incorporated in paragraphs 1 thru 70, plaintiff alleges that all the defendants are in violation to plaintiff Equal Protection right under the 14th Amendment by motivation of a discriminatory and malice purpose to treat plaintiff unequally than other prisoners similary situation.

74.                                 Count IV

(Violation of Due Process Rights)

As incorporated in paragraphs 1 thru 70, plaintiff alleges that all the defendants are in violation to plaintiff due process rights under the 5th and 14th amendments.

75.                                 Count V

(Violation of 8th Amendment)

18

As incorporated in paragraphs 1 thru 70, plaintiff alleges that all the defendants are engaging in violating the plaintiff's 8th amendment right to be free of cruel and usual treatment and that all defendants are being deliberately indifferent to plaintiff's safety and by ignoring the assault on plaintiff and by their ignoring the pervasive risk of harm to plaintiff if transfered to MCI Norfolk or any Doc facility where plaintiff has known enemies.

## Count VI

### (Negligent Supervision)

76.

As incorporated in paragraphs 1 thru 70, plaintiff alleges that defendants Clarke and Oxford failed to adequately supervise and control their subordinate defendant Saba when they allowed Saba to violate regulation 103 DOC 522.06.

## Count VII

### (Vicarious Liability)

77.

As incorporated in paragraphs 1 thru 70, plaintiff alleges that defendants Clarke and Oxford are vicariously liable as supervisors for the acts and omissions and knowing

19

Foreseeable consequences of defendants Saba and Mici's actions and inactions, but for their deliberate indifferences, failed to exercise their authority to alleviate the violation of plaintiff's rights

¶8.

## Count VII

### (Negligent Infliction of Emotional Distress)

As incorporated in paragraphs 1 thru 70, plaintiff alleges that all the defendants knew or should of known that their actions and inactions would likely cause plaintiff unreasonable emotional distress.

## PRAYER FOR RELIEF

80.    Wherefore: plaintiff prays that this Honorable Court grant the following relief.

(a) Substantial compensatory damages in an amount to be determined by a jury at trial including punitive damages to be determined by a jury at trial.

20

(b) issue immediate injunction relief/TRO until Court can schedule a hearing to determine plaintiff placement at MCI Norfolk is no risk to plaintiff's safety.

(c) reasonable attorney fees and cost of this action.

(d) For such relief that this court deems just and proper.

(e) Plaintiff demands a jury by trial.

Dated: 11/7/09

Submitted pro se, by

Reverend Eugene Schofield

Reverend Eugene Schofield, pro se
500 Colony Rd, P.O. Box 466
Gardner, MA 01440

CERTIFICATE OF VERIFICATION

I, Reverend Eugene Schofield, under the pains and penalty of perjury hereby verify that the information contained within this complaint is true to the best of my knowledge and belief.

Dated: November 7, 2009   Signed: Reverend Eugene Schofield