United States District Court
District of Massachusetts

```
_____
                               )
REVEREND EUGENE SCHOFIELD,      )
        Plaintiff,              )
                                )
        v.                      )   Civil Action No.
                                )   09-40204-NMG
HAROLD CLARKE, CAROL MICI, PAUL )
F. OXFORD, and JAMES SABA,      )
        Defendants.             )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Pursuant to 42 U.S.C. § 1983, pro se prisoner Reverend Eugene Schofield ("Schofield") brings suit against various Massachusetts Department of Corrections ("DOC") officials (collectively "the defendants") seeking declaratory, injunctive and monetary relief for a variety of constitutional claims. Pending before the Court is the defendants' motion to dismiss.

I. **Background**

   A. **Factual Background**

On November 12, 2009, Schofield filed a complaint against Harold W. Clark ("Clark"), the DOC's Commissioner, Carol Mici ("Mici"), Assistant Deputy Commissioner for Classification, Paul F. Oxford ("Oxford"), Chief of the DOC's Office of Investigative Services, and James Saba ("Saba"), Superintendent of the North

Central Correctional Institution ("NCCI").[1] The crux of the plaintiff's complaint is that the defendants were deliberately indifferent to his need for protection from threats and assaults by other inmates and retaliated against him for filing numerous grievances and lawsuits against them.

At the time Schofield filed his complaint, he was confined at NCCI in Gardner, Massachusetts. He had previously been housed at several other state correctional facilities, including the Souza-Baranowski Correctional Center ("SBCC") in Shirley and the Old Colony Correctional Center ("OCCC") in Bridgewater. Schofield alleges that while he was at OCCC, he was threatened by several inmates and called a "snitch" for "ratting out some people in the chaplain's office", although it is unclear who he purportedly ratted out or his reasons for doing so.

Sometime during the summer of 2008, Schofield was transferred from OCCC to SBCC for unstated reasons despite his pleas to remain at OCCC. Upon arrival at SBCC, Schofield refused to move into the general population, requesting instead to be placed in protective custody. He was disciplined for refusing to comply with his housing assignment and placed directly into SBCC's segregation unit.

On January 12, 2009, Schofield was transferred from SBCC to NCCI, also for unstated reasons. While at NCCI, he filed

---

[1] Although the Complaint references numerous "attached" exhibits, no such documents were attached to the Complaint or filed with the Court.

repeated grievances against various prison officials alleging racial threats, intimidation and verbal assault. He also filed several lawsuits on behalf of himself and other inmates and soon established a reputation as a "jailhouse lawyer." Schofield claims that as a result of those filings, prison officials became hostile toward him and gave him the "evil eye."

Schofield alleges that on or about October 10, 2009, he was physically assaulted without provocation by an inmate in his housing unit at NCCI. He claims that the investigating officer accused him of starting the fight and placed him in segregation, i.e. the Special Management Unit ("SMU"). Schofield wrote a letter to the Superintendent of NCCI, explaining that he was not responsible for the fight and requesting that he be placed back into the general population. He refused, however, to sign a release stating he could be safely housed in the general population. By contrast, the other inmate signed such a release and the Superintendent recommended that Schofield be transferred to another facility instead. After convening a reclassification hearing on October 28, 2009, the Classification Board recommended that Schofield be transferred to Massachusetts Correctional Institution-Norfolk ("MCI-Norfolk").

**B. Procedural History**

In November, 2009, after the Classification Board announced its decision, Schofield promptly commenced the instant lawsuit,

alleging eight counts against the defendants (in their personal and official capacities) for violations of 42 U.S.C. § 1983 (Count I) and the First, Eighth and Fourteenth Amendments to the United States Constitution (Counts II-V), as well as negligent supervision (Count VI), vicarious liability (Count VII) and negligent infliction of emotional distress (Count VIII). The plaintiff requests compensatory and punitive damages, in addition to immediate injunctive relief precluding his transfer to MCI-Norfolk. The plaintiff's motion for a Temporary Restraining Order was denied as moot on February 8, 2010, because, inter alia, the plaintiff had already been transferred to MCI-Norfolk.

In March, 2010, the defendants moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6), contending that they are entitled to judgment as a matter of law on all counts of the Complaint. The plaintiff opposed the motion in May, 2010. The Court addresses each of the counts seriatim.

## II. Legal Analysis

### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the

pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  Nollet v. Justices of the Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000).  If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied.  See Nollet, 83 F. Supp. 2d at 208.

Although a court must accept as true all of the factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  Threadbare recitals of the legal elements, supported by mere conclusory statements, do not suffice to state a cause of action.  Id.  Accordingly, a complaint does not state a claim for relief where the well-pled facts fail to warrant an inference of any more than the mere possibility of misconduct.  Id. at 1950.

**B.  Application**

**1.  Sovereign Immunity**

The Eleventh Amendment immunizes state officials acting in their official capacities from suits for damages under 42 U.S.C.

§ 1983. See Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 699 (1st Cir. 1995). Therefore, all claims for damages against the defendants in their official capacities must be dismissed.

### 2. Section 1983 Claim (Count I)

Count I of the Complaint alleges a violation of 42 U.S.C. § 1983 itself. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Section 1983 "merely provides a method for vindicating federal rights elsewhere conferred" and is not itself a source of substantive rights. Graham v. Connor, 490 U.S. 386, 393-94 (1989). Count I will, therefore, be dismissed.

### 3. Federal Constitutional Claims (Counts II-V)

Counts II, III, IV and V assert deprivations of federal constitutional rights in violation of 42 U.S.C. § 1983. To prevail on a claim pursuant to § 1983, the plaintiff must prove that his constitutional rights were violated by a person or persons acting under color of state law. Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997). Because the defendants do not dispute that they were acting under color of law, the Court

-6-

will focus on whether their conduct deprived Schofield of rights secured by the United States Constitution or federal law.

### a. First Amendment Claim (Count II)

Schofield alleges in Count II that the defendants transferred him from NCCI to MCI-Norfolk in retaliation for his filing of grievances and lawsuits against them.

The constitutional rights of prisoners "are more limited in scope than the constitutional rights held by individuals in society at large." Shaw v. Murphy, 532 U.S. 223, 229 (2001). Prisoners, however, have a First Amendment right to petition the prison for the redress of grievances and prison officials may not retaliate against prisoners for exercising that right. Brown v. Corsini, 657 F. Supp. 2d 296, 305 (D. Mass. 2009). To establish a retaliation claim, the prisoner must allege that: 1) he engaged in constitutionally protected conduct, 2) prison officials took adverse action against him, 3) with the intent to retaliate against him for engaging in the constitutionally protected conduct and 4) he would not have suffered the adverse action "but for" the prison officials' retaliatory motive. Partelow v. Massachusetts, 442 F. Supp. 2d 41, 51 (D. Mass. 2006).

Wide-ranging deference, however, is given to prison administrators in the pursuit and preservation of prison safety, order and discipline. See Bell v. Wolfish, 441 U.S. 520, 547-48 (1979); Sires v. Berman, 834 F.2d 9, 14 (1st Cir. 1987). Prison

administrators are afforded "extremely broad" latitude in making transfer decisions.  McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979).  Thus, even if the officials had an impermissible reason for the action taken, they may not be held liable if they also had an independent, permissible reason for doing so.  See Puleio v. Comm'r of Corr., 753 N.E.2d 814, 820-21 (Mass. App. Ct. 2001) (citing Scarpa v. Ponte, 638 F. Supp. 1019, 1029 (D. Mass. 1986)); see also Shabazz v. Cole, 69 F. Supp. 2d 177, 198 (D. Mass. 1999) (explaining defendants may not be liable if they produce evidence of a legitimate reason for disciplining the prisoner even in the absence of the grievance).

Schofield's purported filing of grievances and lawsuits falls within the scope of protected activity under the First Amendment.  See Brown, 657 F. Supp. 2d at 305.  Although the transfer of a prisoner to another facility, if made by reason of the prisoner's exercise of his First Amendment rights, may be an "adverse action," see McDonald, 610 F.2d at 18, it is unclear whether Schofield's transfer to a new facility may be deemed an "adverse action" in this case.  The Court need not make that determination, however, because even assuming that Schofield's transfer constitutes an "adverse action", the claim alleged in Count II nevertheless fails.

Because direct evidence of the officials' intent is often unavailable, the Court examines whether a retaliatory intent may

be inferred from the chronology of events which may support an inference of retaliation under some circumstances, see id., but does not here.  Schofield was transferred to NCCI on January 12, 2009, and began filing grievances the following month.  Schofield was assaulted by another inmate, placed in the SMU and appeared before a reclassification board all in the month of October, 2009.  Although Schofield filed grievances and lawsuits throughout his eight months at NCCI, the allegedly retaliatory transfer occurred only after the assault by the other inmate and approximately two weeks after Schofield's subsequent refusal to reenter the general population.

Furthermore, Schofield is unable to demonstrate that "but for" the alleged retaliatory motive of prison officials, he would not have been transferred because the Complaint itself provides an independent, permissible reason for the defendants' decision.  The Complaint states that on October 10, 2009, the plaintiff was assaulted by another inmate in his housing unit at NCCI and, after refusing to sign a release form to remain in the general population, he was placed in the SMU.  Although Schofield wanted to return to the general population and demanded that the assaulting inmate be removed from the general population instead, the other inmate had already signed the release form and Schofield continued to refuse to do so.

Given the choice between housing an inmate who stated he could be safely housed in the general population and one who refused to so state, defendant Saba continued to house the assaulting inmate and transferred the plaintiff instead. That rationale constitutes a legitimate reason for the transfer. See Peterson v. Shanks, 149 F.3d 1140, 1144 (10th Cir. 1998) (applying "but for" standard and concluding that transferring prisoner rather than keeping him in segregation to protect him from other inmates after assault is reasonable means of meeting legitimate penological interest of preserving prisoner's safety). Because 1) the Complaint itself states facts providing a legitimate reason for the defendants' allegedly retaliatory transfer, 2) plaintiff's claim fails to pass the "but for" test and 3) the chronology of events does not support an inference of retaliatory intent, Count II will be dismissed.

### b. Fourteenth Amendment Equal Protection Claim (Count III)

The Complaint alleges that the defendants violated plaintiff's Fourteenth Amendment right to equal protection by treating him "unequally" compared to "other prisoners similarly situat[ed]" (Count III). Beyond that general allegation, however, the Complaint fails to point to specific facts in support of that claim.

Because felons are not a protected class, United States v. Jester, 139 F.3d 1168, 1171 (7th Cir. 1998), and plaintiff here

does not allege any other basis for heightened review, "the Equal Protection Clause requires only that the classification rationally further a legitimate state interest." Nordlinger v. Hahn, 505 U.S. 1, 21 (1992). For an equal protection claim, the plaintiff must make a threshold showing that he was treated differently from others who were similarly situated to him. See id. at 10; see also City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (Equal Protection Clause requires government to treat similarly situated people alike).

Although the Complaint itself does not point to specific facts in support of an equal protection claim, plaintiff's opposition to defendants' motion to dismiss suggests it is premised on defendants' alleged failure to place plaintiff in protective custody. Plaintiff's conclusory assertion that other inmates were placed into protective custody, however, is insufficient to show that those other inmates were so placed under circumstances similar to his. See Graham v. Neel, 2010 WL 4604608, *5 (N.D. Fla. Oct. 5, 2010), accepted and adopted by 2010 WL 4607020 (N.D. Fla. Nov. 5, 2010) (dismissing prisoner's equal protection claim for failure to show other inmates were placed in protective custody under similar circumstances); see also DeJesus v. Edgar, 142 F.3d 439, *1 (7th Cir. 1998) (unpublished table decision) (dismissing inmate's equal protection claim for failure to show other similarly situated

-11-

inmates were allowed to remain in protective custody during the pendency of appeal).

Plaintiff's expression of discontent about defendants' failure to act as he requested does not constitute a violation. Because plaintiff fails to set forth any facts showing that he was treated differently from others who were similarly situated, he fails to meet the threshold showing required to state a viable Equal Protection claim and Count III will be dismissed.

        **c.    Fourteenth Amendment Due Process Claim (Count IV)**

Plaintiff alleges that the defendants violated his Fourteenth Amendment right to due process (Count IV). Although it is unclear in the Complaint, the claim appears to arise from Schofield's transfer from NCCI to MCI-Norfolk.

A state may not deprive a prisoner of life, liberty or property without due process of law. U.S. Const. amend. XIV, § 1; Wolff v. McDonnell, 418 U.S. 539, 556 (1974). To determine whether due process has been violated, the Court considers whether: 1) the plaintiff has been deprived of a protected interest and 2) if so, whether that deprivation was accomplished without due process of law. Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 30 (1st Cir. 2008).

A protected liberty interest may arise from the Due Process Clause itself or from state law. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989). A liberty interest is defined as a

change that creates an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). It is well established that the Constitution does not guarantee that a "prisoner will be placed in any particular prison." Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010) (quoting Meachum v. Fano, 427 U.S. 215, 224 (1976)).

Morever, an inmate does not possess a protected liberty interest in preventing a transfer to a more restrictive form of confinement. Id.; see Sandin, 515 U.S. at 484 (30 days in segregated confinement not hardship); Dominique v. Weld, 73 F.3d 1156, 1160-61 (1st Cir. 1996) (transfer to more secure prison not hardship). Neither does state law provide a protected liberty interest with respect to such transfers. See Drayton v. Comm'r of Corr., 751 N.E.2d 916, 919-20 (Mass. App. Ct. 2001). Indeed, the substantial deference given to prison officials in the discretionary exercise of their duties includes decisions regarding the placement and transfer of prisoners within the correctional system. See Meachum, 427 U.S. at 228.

To prevail on a due process violation claim, Schofield must first show that he has a protected liberty interest. Plaintiff has not done so here because he has a protected liberty interest in neither the housing of his choice nor the prevention of a transfer to another facility. See Gonzalez-Fuentes, 607 F.3d at

887. This is true even if he were transferred to a higher security facility (although NCCI and MCI-Norfolk are both medium security facilities). See Dominique, 73 F.3d at 1160-61. Because Schofield does not have a protected liberty interest in avoiding a higher (or equal) security facility, his due process violation claim fails and Count IV will be dismissed.

### d. Eighth Amendment Claim (Count V)

Count V alleges that Schofield's transfer to MCI-Norfolk violates the Eighth Amendment's ban on cruel and unusual punishment because the defendants were deliberately indifferent to plaintiff's safety by ignoring the assault on him and "the pervasive risk of harm to plaintiff if transferred to MCI-Norfolk or any DOC Facility where plaintiff has known enemies."

The Eighth Amendment requires prison officials to take "reasonable measures to guarantee the safety of the inmates," including protecting prisoners from violence at the hands of other prisoners. Farmer v. Brennan, 511 U.S. 825, 832-33 (1994). Nonetheless, prison officials are not liable for every injury suffered by one inmate at the hands of another. Id. at 834. To establish an Eighth Amendment violation, the inmate must show that: 1) objectively, he is incarcerated "under conditions posing a substantial risk of serious harm" and 2) subjectively, the prison officials involved acted with "deliberate indifference", meaning they knew of and disregarded an excessive risk to his

safety. Id. at 834, 837.

The claim that the defendants violated the Eighth Amendment by transferring plaintiff to MCI-Norfolk cannot be sustained. Although Schofield alleges that "Norfolk was not a safe place for plaintiff to go" because there is the possibility that friends of the inmates who threatened him at OCCC might be housed at MCI-Norfolk, he does not explain why he believes that friends of his aggressors are likely to be housed at MCI-Norfolk or why they pose a genuine threat to his safety. The Complaint states there are "ongoing threats on plaintiff's life" but fails to provide any specifics, such as 1) who threatened the plaintiff or 2) the content, type and severity of the threats. See Kelley v. Wall, 2010 WL 5176172, *3 (D.R.I. 2010).

The Complaint also alludes to threats "by inmates and officers [at OCCC] who had labeled plaintiff a 'rat' (i.e. snitch) for informing on OCCC's 2 chaplains." Although being labeled a "snitch" may subject a prisoner to a substantial risk of injury, there are no facts suggesting that the named defendants themselves labeled plaintiff a snitch, that the label was communicated by them to other inmates or that they were aware of the danger associated with a reputation as a snitch. See, e.g., Benefield v. McDowall, 241 F.3d 1267, 1271 (10th Cir. 2001). Plaintiff's subjective fear that he would be harmed, without any factual predicate or rational justification, is

-15-

insufficient to establish a "substantial risk of serious harm."

Nor can the defendants be liable for allegedly "ignoring the assault." The Complaint indicates that after Schofield was "physically assaulted without [] provocation by an inmate" in his housing unit, "defendant Saba asked plaintiff what happened" and various prison officers investigated the incident. When Schofield refused to sign a release stating that he could be safely housed in the general population, he was moved to the SMU and subsequently transferred to another facility after a reclassification hearing. As the Complaint itself indicates, the defendants took numerous measures to ensure plaintiff's safety following the assault. Plaintiff's obvious discontent with the fact that the defendants apparently did not discipline the assaulting inmate despite plaintiff's demand that the "aggressive inmate who assaulted him be punished and removed from population" cannot sustain his claim that the defendants were deliberately indifferent to plaintiff's needs "by ignoring the assault."

Because plaintiff fails to allege sufficient facts to support a conclusion that he has been subjected to a serious risk of harm or that the named defendants have acted with deliberate indifference to his safety, Count V will be dismissed.

### 4. Negligent Infliction of Emotional Distress (Count VIII)

Count VIII alleges that the defendants "knew or should [have] known that their actions and inactions would likely cause

plaintiff unreasonable emotional distress." Plaintiff's claim appears to be made under Massachusetts state tort law but whether construed under state or federal law, it will be dismissed because, inter alia, it fails to allege physical injury.

To prevail on a claim for negligent infliction of emotional distress under Massachusetts state law, the plaintiff must show: 1) negligence, 2) emotional distress, 3) causation, 4) physical harm manifested by objective symptomatology and 5) that a reasonable person would have suffered emotional distress under the circumstances of the case. Payton v. Abbott Labs, 437 N.E.2d 171, 181 (Mass. 1982). Although Schofield has alleged emotional distress (and separately alleged unrelated physical harm caused by another inmate's assault), he fails to allege any physical harm manifested by "objective symptomatology" of the emotional distress.

For the same reason, plaintiff fails to state a federal claim for negligent infliction of emotional distress because pursuant to 42 U.S.C. § 1997e(e), a prisoner may not bring a federal civil action "for mental or emotional injury suffered while in custody without a prior showing of physical injury." Count VIII, therefore, will be dismissed.

### 5. Negligent Supervision (Count VI) and Vicarious Liability (Count VII)

The remaining counts allege that defendants Clarke and Oxford "failed to adequately supervise and control their

subordinate defendant Saba" (Count VI) and are "vicariously liable for the actions and inactions of defendants Saba and Mici" (Count VII).

Supervisory liability under § 1983 "may not be predicated upon a theory of respondeat superior." Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). In other words, an official may not be held vicariously liable for the conduct of his subordinate but rather may be found liable "only on the basis of her own acts or omissions." See id. (citations omitted). Thus, Count VII alleging vicarious liability must be dismissed in its entirety and Count VI alleging negligent supervision must be dismissed to the extent plaintiff's theory of liability is based solely upon the supervisory status of Clarke or Oxford.

Absent participation in the challenged conduct, however, a supervisor may be held liable for the acts of a subordinate if: 1) the subordinate's behavior results in a constitutional violation and 2) the supervisor's action or inaction was "affirmatively linked" to the behavior in that it could be characterized as "supervisory encouragement, condonation or acquiescence" or gross negligence amounting to "deliberate indifference." Hegarty v. Somerset Cnty., 53 F.3d 1367, 1379-80 (1st Cir. 1995); see also Madonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994) (requiring causal link between

-18-

supervisor's behavior and subordinate's conduct).  Mere negligence is inadequate to establish supervisory liability. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 92 (1st Cir. 1994).

Count VI alleges that defendants Clarke and Oxford "failed to adequately supervise and control their subordinate defendant Saba when they allowed Saba to violate regulation 103 DOC 522.06."[2]  In essence, plaintiff alleges that defendant Oxford should have investigated plaintiff's grievances but wrongfully permitted defendant Saba to investigate and decide them instead. Not only does plaintiff fail to allege that Saba's behavior resulted in a constitutional violation but he also fails to allege a causal link with respect to Oxford's action or inaction. The only relevance plaintiff alleges with respect to defendant Clarke is that he promulgated the regulations which is insufficient to state a claim against Clarke.  To the extent Count VII, by use of the phrase "deliberate indifference", attempts to raise a claim of supervisory liability beyond mere "vicarious liability", it fails for similar reasons.

In sum, although plaintiff's arguments are cogently presented, the Complaint in its entirety fails to state a claim upon which relief can be granted and must, therefore, be dismissed.

---

[2] The Complaint as a whole makes clear that plaintiff intends to refer to "Categories of Employee Misconduct Investigations", 103 DOC 522.07.

**ORDER**

In accordance with the foregoing, defendants' Motion to Dismiss the Complaint (Docket No. 18) is **ALLOWED.**

**So ordered.**

                                              /s/ Nathaniel M. Gorton
                                              Nathaniel M. Gorton
                                              United States District Judge

Dated March 10, 2011